SPINNER-HAY LUMBER CO. v. APPLEBAUM et al. (No. 7637.)

(Court of Civil Appeals of Texas. Galveston. Dec. 18, 1918.)

1. CONTRACTS ⬭322(1) — ACTION UNDER BUILDING CONTRACT—BURDEN OF PROOF.

Under a contract to settle a controversy under a building construction contract, whereby part of the agreed price was placed in escrow subject to completion of the contract by plaintiff, and which provided that if the tin work was not done the owner might complete the work and recover for it as itemized statements from competent workmen showed actual cost, the burden was on the owner to show the cost of completing the tin work in order to recover therefor.

2. CONTRACTS ⬭198(2) — BUILDING CONTRACTS—CONSTRUCTION.

Under a building contract expressly providing that tin work must be properly done with proper fall, the duty rested on the contractor of leveling the building if such action was necessary to give the guttering the proper fall.

Appeal from Harris County Court; W. E. Monteith, Judge.

Action by the Spinner-Hay Lumber Company against J. Applebaum and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

See, also, 186 S. W. 810.

Love & Fouts, of Houston, for appellant.

PLEASANTS, C. J. This suit was brought by appellant against the appellees to recover the sum of $224, with 8 per cent. interest from October 1, 1913. Plaintiff's cause of action is based upon a contract executed by the parties on September 17, 1913, the substance of which is as follows:

It recited that appellant had constructed certain improvements for Applebaum and wife, under a contract which provided for the payment of $2,790, and that differences had arisen between the parties as to whether said houses had been completed in accordance with the contract and plans and specifications, and that the parties, in order to settle the difference thus arising, agreed:

(1) That Applebaum and wife would pay to the appellant the sum of $2,790, as follows: $2,566 to be paid upon the execution of the contract, and which sum was receipted for thereby, "and the remaining sum of $224.00 to be placed with Meyer C. Wagner

to be held in escrow until the first party (appellant) has completed the work herein recited to be done by said first party."

(2) Appellant agreed to have the water pipes properly placed and tapped with the city main in such manner as to bring water into said houses, and cost and expense therefor to be paid by appellant, and the work to be completed not later than September 22, 1913, and appellant agreed, in the event of the failure to so complete said water connections within the time specified, to pay Applebaum and wife $3 for each day's delay until the work was done, and for the purpose of further protecting the said Applebaum and wife the sum of $224 placed in escrow should be held until the completion thereof.

(3) Appellant agreed to repair three windows at an estimated value of $3, and on failure to fix said windows by September 19, 1913, Applebaum and wife were authorized to do that work and receive the sum of $3 therefor.

(4) Appellants agreed to furnish four keys for inside rooms, and upon their failure to furnish said keys by the evening of September 18, 1913, the sum of $4 should be retained to secure payment thereof by Applebaum and wife, who were then authorized to have keys fitted.

(5) Appellants obligated themselves to have all the tin work on said houses "properly done with proper fall and in proper workmanlike manner," which work was to be done by September 24th; said contract with reference to the tin work continuing as follows:

"And failing to do said work by that date, second party is authorized to contract for said work to be done, and all costs and expenses therefor will be paid by first party; that of the amount placed in escrow $71.00 is to protect against claim now outstanding by tinner for payment for his work, and which work has not been accepted by second party, and a controversy has arisen between second party and first party and between tinner and first party as to proper work. It is distinctly understood that the tin work must be properly done with proper fall and in a first-class workmanlike manner. Should first party fail to do and perform and complete said tin work as required by September 24, 1913, second party is authorized to proceed to contract for such work to be done, and the sum held in escrow shall be applied in payment therefor, and should amount not be sufficient, then first party hereby admits liability for any deficiency in amount in escrow to cover payment for all obligations herein undertaken by first party, and such amount shall be paid as itemized statements from competent workmen show actual cost."

(6) The last and final provision of said escrow agreement was as follows:

"First party upon execution hereof binds himself to deliver possession of said houses to sec-

ond party, and such possession and occupancy shall not be a waiver of any legal rights as to the items herein specified, but shall be an acceptance of all other portions thereof, and as to items herein mentioned acceptance thereof is not made by second party and so expressly understood."

Appellants alleged the construction and completion of the houses under the original contract, the difference arising over the acceptance of the work and the execution of the subsequent or escrow agreement, and alleging that appellants had fully complied with said escrow agreement, and that the escrow agent Wagner had refused to pay plaintiffs said sum of $224 deposited with him under the terms of said escrow agreement, and prayed judgment for said sum with interest.

Appellees Applebaum and wife, in their answer, admitted the execution of the contracts pleaded by plaintiffs and admitted that the sum of $224 was placed with Meyer C. Wagner to be held in escrow under the terms of the contract of September 17, 1918. They also admitted that the water pipes provided for in the contract had been connected up as required by said contract, except that plaintiffs had failed to place a cut-off as provided for in the original contract, and that the cost of replacing said cut-off was $5. They denied that plaintiffs had repaired the three windows as required, and alleged that defendants did the work at an expense of $2.60. They admitted that plaintiffs furnished the keys to the houses as alleged in plaintiffs' petition.

Said defendants, in paragraph 10 of their answer, alleged that plaintiffs had refused to have all the tin work on said houses properly done with proper fall and in a proper, workmanlike manner, and that said defendants had made demand on plaintiffs for the performance of said work, which was refused, and that the reasonable cost of having the tin work on said houses properly done with proper fall and in a proper and workmanlike manner would be the sum of $120, "and which sum these defendants are entitled to receive for the purpose of having said tin work on said houses properly done with proper fall, and in a proper and workmanlike manner, and which sum is the reasonable cost for the performance of said work."

In paragraph 11 of said answer said defendants admitted that the sum of $71 was placed in escrow to protect against claims outstanding by the tinner for the payment for his work, and that said defendants did not know whether said claim had been paid or not, and, if the same had not been paid, said defendants were entitled to recover the sum of $71 held in escrow in payment of said tinner's claim.

Paragraph 13 of said defendants' answer is as follows:

"These defendants further allege under the terms of said contract it was provided that he, the first party (meaning plaintiffs herein), failed to do or perform and complete said tin work as required by September 24, 1913, that these defendants were authorized to proceed to contract for such work to be done, and the sum held in escrow to be applied in payment therefor; that said work was not done, and that these defendants notified Meyer C. Wagner that they desired to contract to have said work done and receive from the said Meyer C. Wagner such sum as would be required to do and perform such work, and the said Meyer C. Wagner refused to pay said sum unless consent was obtained from the first parties in order to relieve him from any personal liability by virtue of said payment."

Paragraph 15 of said answer is as follows:

"Defendants deny that plaintiffs fully complied with the terms and requirements of said contract, and these defendants say they notified the said Meyer C. Wagner not to deliver said money held in escrow to the said plaintiffs herein, and to hold said sum until compliance with the terms of said contract.

"Wherefore, these defendants pray that said plaintiffs take nothing by their said suit, and these defendants go hence without day and recover their costs in this behalf expended, but in the event the court finds for plaintiffs, then that defendants be credited with such amount as defendants are entitled to, together with costs of court."

The defendant Wagner answered, admitting that he is holding in escrow the sum of $224 under the terms of the contract hereinbefore referred to, and further alleged that Applebaum and wife had notified him not to pay said sum of money, "because of said claim or claims made by them for certain work, consisting of a cut-off to be placed, costs of window pane, and failure of plaintiffs herein to have the tin work on said houses properly done, with proper fall, and in a proper and workmanlike manner, and because of notice of lien by Tinner's Supply Company." He further alleged that he was still holding the sum of $224 in escrow until it should be determined to whom said money is due, and concluded with the prayer that the court determine to whom said money "is due and owing."

By way of replication to the pleadings of the defendant, appellants denied that they had failed to perform the work required by the terms of the escrow agreement, and specially alleged that they had had said tin work done in accordance with the said contract of settlement, and that defendants had failed to have any work claimed by them to be defective or insufficient or omitted, done, and an itemized statement of competent workmen showing the actual cost of doing said work, as required by said contract, and therefore they were not entitled to have, receive, or further hold the money

so placed in escrow under the terms of said supplemental contract.

This is the second appeal in this case. See Applebaum v. Spinner-Hay Lumber Co., 186 S. W. 810. Upon the first trial of the case the defendants Applebaum and wife, having admitted that they had not had any of the work done which they claimed in their answer was not properly done by appellants, the court instructed the jury to return a verdict for appellants, from which judgment Applebaum and wife appealed, and the Court of Civil Appeals at San Antonio reversed said judgment, holding that this action of the court was erroneous. A second trial was had upon the same pleadings on October 5, 1917, upon which trial the court submitted the case to the jury upon three special issues: First, as to whether or not the tin work on the houses mentioned in the contract was completed in a proper, workmanlike manner, and with proper fall, and according to the specifications in the original contract; second, whether or not said tin work could have been completed so as to comply with the specifications in a proper, workmanlike manner and with proper fall. The jury having answered both of said issues in the negative, the court rendered judgment on the verdict in favor of all the defendants, and that plaintiffs take nothing against them.

[1] The undisputed evidence adduced upon the trial shows that the claim of the tinner who did the tin work on the building for $71 had been paid by the appellant. Upon this state of the pleadings and evidence, there is no theory on which judgment in favor of defendants for the whole of the $224 can be sustained. The finding of the jury that the tin work upon the buildings could not have been completed in compliance with the specifications of the contract is without support in the pleadings or evidence, and that issue was not in the case. The answer of defendants avers that the tin work could be completed for the sum of $120, and they only claim that amount for the failure of appellant to complete said work. Upon the pleading and undisputed evidence no judgment could be rendered in favor of appellees upon this claim for more than the $120, and in addition thereto for items of $5 for the cut-off and $2.60 for repair of the windows. But the evidence is not sufficient to show the cost of the completion of the tin work, and since, under the terms of the contract, it devolved upon appellees to show such cost, the judgment must be reversed. As presented by this record, this was the only issue in the case, and there was apparently little effort to develop the evidence thereon.

The man who undertook to correct the defects in the tin work testified that the guttering could not be given the proper fall to carry off the water because the houses were not level, and that, not being a carpenter, he could not tell what it would cost to "jack" the houses up and make them level. That the cost of such work could have been easily ascertained is apparent, but it was not shown.

[2] We cannot agree with appellant in the contention that the contract did not require it to remedy this defect in the houses which prevented the tin work from having the proper fall to carry off the water which fell on the roofs of the buildings. The contract expressly provides that the tin work "must be properly done with proper fall." The evidence shows that the tin work mentioned in the contract was the guttering placed under the eaves of the houses to catch and carry off the water from rains which fell upon the roofs, and that this guttering could not be given the proper fall without leveling the houses. Appellant cannot relieve itself of its obligation to give the proper fall to this tin work on the ground that the defect is in the house and not in the tin work. The contract cannot be properly so construed.

For the reasons indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

